COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTONIO DEMOND WATKINS,

Defendant-Appellant.

UNPUBLISHED
September 15, 2015

No. 321591
Genesee Circuit Court
LC No. 13-033246-FC

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, carrying a concealed weapon (CCW), MCL 750.227(2), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to concurrent prison terms of 50 to 75 years for the murder conviction, and 4 to 7-1/2 years each for the CCW and felon-in-possession convictions, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he is entitled to a new trial because defense counsel was ineffective for failing to make appropriate objections at trial. Because defendant failed to raise this issue in an appropriate motion in the trial court, and this Court denied defendant's motion to remand for an evidentiary hearing on the issue of ineffective assistance of counsel,[1] our review of this issue is limited to errors apparent from the record. *People v Rodriguez,* 251 Mich App 10, 38; 650 NW2d 96 (2002); *People v Snider,* 239 Mich App 393, 423; 608 NW2d 502 (2000). Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Eloby (After Remand),* 215 Mich App 472, 476; 547 NW2d 48 (1996). To

---

[1] The motion was not supported with an affidavit or other offer of proof. This Court denied the motion "for the failure to demonstrate by affidavit or offer of proof the facts to be established at a hearing on remand." *People v Watkins*, unpublished order of the Court of Appeals, entered December 19, 2014 (Docket No. 321591).

establish a claim of ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Defendant must also show that "the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

All of defendant's claims of ineffective assistance of counsel are predicated on the contention that counsel failed to object to certain evidence. However, defendant fails to offer any explanation for his contention that the challenged testimony was inadmissible, or cite any authority in support of his arguments. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). In addition, an argument on appeal "must be supported by citation to an appropriate authority or policy," *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626; 750 NW2d 228 (2008), and an issue may be deemed abandoned when a party fails to support his argument by citation to relevant authority. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

Furthermore, our review of the challenged testimony fails to disclose any apparent basis for an objection. Tracey P. Newman's testimony about defendant's statement to her regarding the nature of his argument with the victim, Sunta Newman, was not inadmissible hearsay. The testimony was admissible under MRE 801(d)(2)(A), because it involved defendant's own statement offered against him. Defendant has not established any other basis for concluding that the testimony was inadmissible.

Next, when Tracey attempted to testify that a police officer had disclosed information about the victim's death, the prosecutor immediately reminded her not to mention what other people said to her. Defense counsel reasonably could have concluded that an objection was not necessary in light of the prosecutor's immediate corrective action.

Defendant also complains that Tracey improperly "gave her opinion of the verdict." Our review of the challenged testimony fails to disclose any apparent basis for an objection, or any basis for concluding that defendant was prejudiced by the testimony. Although Tracey stated that she knew what had happened and therefore did not want to hear what witness Carl Six had to say, she did not say what she thought had happened, or express any opinion regarding defendant's guilt or innocence.

Defendant also complains about Tracey's testimony regarding threats from defendant. However, once Tracey disclosed that she learned about the threats from her daughter, defense counsel immediately objected and the testimony was stricken as inadmissible hearsay. Thus, counsel acted appropriately to foreclose consideration of the testimony.

Defendant also asserts that defense counsel should have objected to Tracey's testimony on the ground that, even if otherwise admissible, it should be excluded under MRE 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" However, the mere fact that evidence is damaging does not mean that it constitutes "unfair prejudice" because "[a]ny relevant testimony will be damaging to

some extent." *Sclafani v Peter S Cusimano, Inc,* 130 Mich App 728, 735-736; 344 NW2d 347 (1983). "[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). Defendant offers no basis for concluding that Tracey's testimony was unfairly prejudicial. Thus, he has not established that counsel was ineffective for failing to object on that basis.

Defendant also argues that defense counsel was ineffective for failing to object to Deputy Roe's testimony regarding the police efforts to locate defendant and his eventual capture on Lady's Island in South Carolina. However, that testimony was relevant to the issue of flight, which was probative of defendant's consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). The prosecutor was not required to prove that defendant left the jurisdiction because he knew he was wanted and was motivated by fear of apprehension. *People v Smelley*, 485 Mich 1023, 1023; 776 NW2d 310 (2010). While much of Roe's testimony describing the history of Lady's Island and the local citizenry was not particularly relevant to the primary issue of defendant's identity as the offender, it also was not particularly prejudicial to this case because it had nothing to do with defendant personally. For these reasons, defendant has not established that defense counsel was ineffective for failing to object to the testimony.

The record also fails to disclose any basis for concluding that defense counsel was ineffective for failing to object to testimony describing defendant's conduct during the corporeal lineups. First, defense counsel did object to Six's testimony. Although counsel did not object to Sergeant Herfert's testimony that defendant "was trying to change the appearance of his face by dropping his chin and bringing it inward towards his body," that testimony qualified for admission under MRE 701 as an opinion or inference rationally based on the witness's perceptions and helpful to a determination of a fact in issue. Further, testimony regarding a defendant's conduct that indicates a consciousness of guilt or is inconsistent with innocence is admissible. *People v Falkner,* 36 Mich App 101, 108; 193 NW2d 178 (1971), rev'd on other grounds 389 Mich 682 (1973). Accordingly, counsel was not ineffective for failing to object to the testimony.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant next challenges the sufficiency of the evidence offered in support of his murder conviction. A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). In reviewing the sufficiency of the evidence in a criminal case, this Court must review the record de novo and, viewing both direct and circumstantial evidence in a light most favorable to the prosecution, determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997); *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995).

To establish second-degree murder, the prosecutor must prove "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have a lawful justification or excuse." *People v Randy Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Defendant challenges the evidence only as it relates to the second element—

that it was *his* act that caused the victim's death. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The positive identification of defendant by witnesses may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700, 705-706; 617 NW2d 381 (2000). "A complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict;" corroborating physical evidence is not required. *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976).

Carl Six was good friends with Sunta Newman. Six had met defendant, whom he knew as "Hammer," through Newman, because defendant was in a relationship with one of Newman's sisters. Six was with Newman at a gas station when Newman argued with and was fatally shot by another man. Six testified that he recognized the man as someone he had met through Newman, but could not recall his name. After talking to Newman's family, who believed Hammer was the gunman, Six recalled that the man's name was Hammer. There was also evidence that defendant was upset with Newman, who had not paid defendant the money he believed he was owed. This argument began several days before the shooting. Six recalled that the man at the gas station asked Newman for his money and that Newman brushed it off as something "old." This evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the shooter, and shot Newman because of a dispute over money. While defendant elicited evidence to show that Six never mentioned to two of the officers who questioned him that he recognized the gunman, and thus must have named defendant solely on information obtained from the Newman family, a third officer testified that Six did say that he recognized the gunman, but did not recall his name. In any event, "[w]itness credibility and the weight accorded to evidence is a question for the jury, and any conflict in the evidence must be resolved in the prosecution's favor." *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). The issue of witness credibility will not be resolved anew on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

To the extent that defendant challenges the admission of Six's identification testimony, the issue has not been preserved for appeal because defendant did not object to the testimony at trial or move to suppress it. *People v Daniels*, 163 Mich App 703, 710; 415 NW2d 282 (1987). Thus, review is limited to plain error affecting defendant's substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

Defendant asserts that Six's identification of him at the police lineup was improper, because Six previously received information from the victim's family, which defendant maintains influenced his identification of defendant at the lineup. However, defendant does not claim that there was anything improper or unduly suggestive regarding the lineups themselves, i.e., that he was singled out in some way from the other subjects so as to create "a substantial likelihood of misidentification." *People v Kurylczyk*, 443 Mich 289, 306; 505 NW2d 528 (1993). Furthermore, even if information from the victim's family contributed to Six's identification of defendant as the gunman, that would not render the identification testimony inadmissible. "[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v New Hampshire*, __ US __; 132 S Ct 716, 730; 181 L Ed 2d 694 (2012). Absent "the taint of improper state conduct," the reliability of identification testimony is an issue of fact for the jury to determine.

*Id.* at 728. Accordingly, defendant has not shown plain error in the admission of Six's identification testimony.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor's conduct denied him a fair trial. This issue has not been preserved because defendant did not object to the prosecutor's conduct at trial. *People v Bennett,* 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved issues of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Goodin,* 257 Mich App 425, 431; 668 NW2d 392 (2003). This Court reviews claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial. *Id.* at 432.

Defendant's claims relate to the prosecutor's efforts to admit the evidence discussed in section I of this opinion. A claim of "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence. The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999) (citations omitted). As discussed in section I, most of defendant's evidentiary complaints are without merit. To the extent that some witnesses offered improper testimony, the record discloses that the testimony was either unresponsive to the prosecutor's objections or appropriately stricken after its inadmissibility became apparent. There is no indication that the prosecutor deliberately sought to solicit or encourage any inadmissible testimony. Thus, defendant has failed to show a plain error affecting his substantial rights.

## IV. FAILURE TO INVESTIGATE EVIDENCE

Defendant next argues that the prosecutor violated his due process rights and denied him a fair trial by failing "to investigate and analyze evidence" recovered from the crime scene.[2] This issue is not preserved because it was not raised in the trial court. *People v Hanks,* 276 Mich App 91, 95; 740 NW2d 530 (2007); *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). An unpreserved constitutional issue is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764; *Hanks,* 276 Mich App at 95.

A defendant's due process right to evidence has been recognized in cases such as *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and *Arizona v Youngblood,* 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988). In *Brady,* 373 US at 87, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good

---

[2] To the extent defendant claims error due to the prosecutor's failure to produce two endorsed witnesses, the record discloses that defense counsel expressly agreed to waive the witnesses' production at trial. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001).

faith or bad faith of the prosecution." In order to establish a *Brady* violation, a defendant must prove that (1) the state possessed evidence of exculpatory or impeachment value to the defendant; (2) the prosecution suppressed the evidence; and (3) the evidence, viewed in its totality, was material, meaning that had the evidence been disclosed to the defense, a reasonable probability exists that the result of the proceedings would have been different. *People v Chenault,* 495 Mich 142, 150-151, 155; 845 NW2d 731 (2014).

The evidence showed that various items were found on the premises of the gas station, some of which were collected. The collected items included a jacket, a T-shirt, a cell phone, a water bottle, and a Faygo pop bottle. The bottles were tested for fingerprints, but nothing was done with the coat, the shirt, or the cell phone. There is nothing in the record to suggest that any of these items had exculpatory or impeachment value, or that they were withheld from the defense, and defendant does not contend otherwise. Instead, he contends that the clothing items should have been tested to see if they could be connected to him and the call records of the cell phone (assuming it was Newman's phone) should have been obtained to see if there were any calls between Newman and defendant on the date of the offense. There is a distinction between the failure to develop evidence and the failure to disclose evidence. *People v Vaughn,* 200 Mich App 611, 619; 505 NW2d 41 (1993), rev'd on other grounds 447 Mich 217 (1994). The police and prosecutor are not required to seek and find exculpatory evidence or to test evidence for the defendant's benefit. *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003); *People v Miller (After Remand),* 211 Mich App 30, 43; 535 NW2d 518 (1995). Defendant has therefore failed to show a plain error.

## V. DEFENDANT'S PRO SE STANDARD 4 BRIEF

Defendant raises two additional claims in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. He first contends that the trial court erred in denying his speedy trial motion. Defendant filed a motion "regarding speedy trial," which was in actuality a motion for a personal recognizance (PR) bond under MCR 6.004(C).[3] A criminal defendant has a right to a speedy trial. *People v Mackle*, 241 Mich App 583, 602; 617 NW2d 339 (2000). The right to a speedy trial requires that the trial commence within a reasonable time under the circumstances. *People v Spalding*, 17 Mich App 73, 75; 169 NW2d 163 (1969). Whether a defendant has been denied his right to a speedy trial involves consideration of four factors: (1) the length of the delay, (2) the reasons for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999).

The delay period commences at the arrest of the defendant. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Defendant was arrested on February 4, 2013. The trial began

---

[3] To the extent defendant argues that the trial court erred in denying his motion for a PR bond, the issue is moot because it is impossible to afford defendant any relief. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). The remedy for a violation of MCR 6.004(C) is release from jail, on personal recognizance, while awaiting trial. This case has already proceeded to trial and defendant is serving a sentence for his convictions.

-6-

11 months later on January 23, 2014. A delay of six months is necessary to trigger an investigation into a claim that a defendant has been denied a speedy trial. *People v Daniel*, 207 Mich App 47, 51; 523 NW2d 830 (1994). In assessing the reasons for the delay, each period of delay is examined and attributed to the prosecutor or the defendant. *People v Ross,* 145 Mich App 483, 491; 378 NW2d 517 (1985). Defendant notes that some of the delay was attributable to the prosecutor and some to him, but he has not broken down each period of delay and indicated to whom that particular period should be attributed.

To the extent defendant could be said to have asserted his right to a speedy trial, he did so in a motion filed on December 11, 2013, just six weeks before the trial began. Where a defendant asserts his right to a speedy trial near in time to the actual commencement of the trial, this factor "weighs only the slightest in defendant's favor." *People v Waclawski*, 286 Mich App 634, 667-668; 780 NW2d 321 (2009).

The right to a speedy trial protects "three interests of the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; (3) limitation of the possibility that the defense will be impaired." *People v White*, 54 Mich App 342, 351; 220 NW2d 789 (1974). "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). Because the actual delay was less than 18 months, the burden is on the defendant to prove that he was prejudiced by the delay. *Cain*, 238 Mich App at 112. "[A]nxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Although defendant was incarcerated pending trial, the prejudice element may properly weigh against an incarcerated defendant as long as his defense is not prejudiced by the delay. *Williams*, 475 Mich at 264. Prejudice to the defense is that which meaningfully impairs a defendant's ability to defend against the charges against him to the extent that the outcome of the proceeding will likely be affected. *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998). Defendant contends that the delay caused inconsistencies to develop, but he does not explain what these inconsistencies were or how they affected his ability to defend against the charges. Defendant also contends that the delay gave prosecution witnesses time to collaborate on their testimony, but he has not shown that any witnesses did collaborate on their testimony. Further, to the extent any such collaboration was possible, defendant has not explained why it was attributable to the period of delay following his arrest as opposed to the period of delay preceding his arrest.

Because the delay was slightly less than one year, defendant has not shown who was responsible for the majority of the delay, defendant waited until the eve of trial to assert his right, and defendant has not shown how the delay prejudiced his ability to defend against the charges, we conclude that defendant has not shown a violation of his right to a speedy trial.

Defendant also contends that the trial court lacked subject-matter jurisdiction due to defects in the original complaint and warrant. Whether a court has subject-matter jurisdiction is a question of law that is reviewed de novo on appeal. *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996). It is unnecessary to determine whether the complaint and warrant were defective. "[I]n a criminal case, an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and

the defendant appears before the court. The sole effect of an illegal arrest is the possible suppression of evidence recovered as a result of the arrest." *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009) (citations omitted). The trial court had subject-matter jurisdiction over the charges, all of which were felonies, *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011), and had jurisdiction over defendant's person, given the filing of a return binding him over to the circuit court following the preliminary examination, *People v Goecke,* 457 Mich 442, 458-459; 579 NW2d 868 (1998), and defendant does not claim that any evidence was recovered as a result of his arrest. Therefore, we reject this claim of error.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering