# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 18, 2017

v

No. 330513
Oakland Circuit Court
LC No. 2014-252872-FC

MARK STEVEN STEINER,

Defendant-Appellant.

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right from jury convictions of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and felonious assault, MCL 750.82(1). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 15 to 40 years for the robbery conviction and 3 to 15 years for the assault conviction, and a consecutive term of 10 to 25 years' imprisonment for the home-invasion conviction. We affirm.

## I. FACTS

A gunman entered Ronald Thomas's apartment in the middle of the night. Thomas woke up and discovered the man in his kitchen, where a light had been left on. The man walked up to Thomas, who "looked at him straight in the eyes." The man was wearing glasses and a mask over a part of his face; he was holding a gun in one hand and a big knife in the other hand. The man announced a robbery and threatened Thomas. Thomas attempted to retreat to his bedroom, but the man followed and prevented Thomas from closing the door. While the man was looking at an item in the bedroom, Thomas ran out of the apartment and held the door closed until the police arrived. The police did not find anyone inside the apartment, but the sliding glass door leading to the balcony—which had a broken lock—was open. A gun and knife were found on the ground beneath the balcony. Although the gunman had been wearing a bandanna across the lower half of his face, Thomas was adamant that defendant was the man in his apartment. Defendant matched the physical description provided by Thomas, was wearing the same clothing described by Thomas, and had a blue bandanna on his person. A cell phone registered to defendant was also found inside Thomas's apartment. That cell phone had received a text message at 3:49 a.m. from a woman who: lived in the apartment complex, had a dating relationship with defendant, and had been hired to clean Thomas's apartment.

-1-

## II. IDENTIFICATION TESTIMONY

Defendant first argues, both through counsel and in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that the trial court erred in denying his motion to suppress Thomas's identification testimony. The trial court's ruling regarding the admissibility of identification evidence is reviewed on appeal for clear error, which "exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

In *People v Kevin Williams*, 244 Mich App 533, 542-543; 624 NW2d 575 (2001), this Court explained:

> An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. In order to challenge an identification on the basis of lack of due process, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established "that is untainted by the suggestive pretrial procedure." [Citations omitted.]

Thomas first identified defendant at the preliminary examination. Defendant argues that this atmosphere was unduly suggestive because defendant was wearing a jail uniform and was seated at defense counsel's table. The preliminary examination presents "a suggestive atmosphere in that the defendant was placed in the courtroom in prison garb." *People v Colon*, 233 Mich App 295, 305; 591 NW2d 692 (1998). However, the mere fact that "an identification procedure is suggestive does not mean it is necessarily constitutionally defective," *id*. at 304, because the issue is not whether the procedure "was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification." *Kurylczyk*, 443 Mich at 306. There is no per se rule that an in-court identification is unduly suggestive simply because "the witness knows that the defendant is the person charged with the offense and is the person the witness is asked to identify." *People v Fuqua*, 146 Mich App 133, 143; 379 NW2d 396 (1985), overruled in part on other grounds by *People v Heflin*, 434 Mich 482, 498; 456 NW2d 10 (1990). Instead, there must be other circumstances that create a substantial likelihood of misidentification. See, e.g., *People v Solomon*, 47 Mich App 208, 216-218; 209 NW2d 257 (1973) (LESINSKI, C.J., dissenting), rev'd, adopting dissent 391 Mich 767 (1974) (the witness first identified the defendant more than two years after the offense and after he had been told by the police "that they had the right man"); *Fuqua*, 146 Mich App at 144 (there were several witnesses whose descriptions of the suspect differed substantially from the defendant's appearance, they were able to observe the defendant in court for some time, and they were able to communicate with one another after one identified the defendant for the first time in court). Because defendant relied solely on his appearance and location in the courtroom, and that alone did not establish that the identification procedure was unduly suggestive, the trial court did not clearly err in denying defendant's motion to suppress Thomas's identification testimony. And because defendant identified no facts that might have rendered the in-court identification unduly suggestive, he failed to establish a need for an evidentiary hearing.

## III. FLIGHT INSTRUCTION

Defendant next argues, both through counsel and in his Standard 4 supplemental brief, that the trial court erred in giving a flight instruction. Whether a particular instruction is applicable to the facts of the case is a matter within the trial court's discretion that is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citation omitted).

The defendant is entitled to have a properly instructed jury. *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010) (citation omitted). "A court must instruct the jury so that it may correctly and intelligently decide the case." *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998). "Jury instructions must therefore include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004) (footnote omitted). This Court reviews jury instructions in their entirety to determine if there is error requiring reversal. *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994).

Evidence of flight is admissible because it permits an inference of consciousness of guilt, although such evidence alone is insufficient to sustain a conviction. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Flight includes "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*.

Here, although defendant discusses the law relative to flight, he does not specifically contend that the trial court erred in admitting evidence of flight or that, such evidence having been admitted, a flight instruction was not appropriate. His dispute instead focuses on the wording of the standard instruction, which refers to "the defendant" rather than to "the perpetrator of the offense who is alleged to be the defendant" or something similar. Defendant contends that use of the term "the defendant" presupposes that he, as the defendant in this case, is the person who fled. Thus, defendant argues, the instruction should not be given when the defendant denies that he committed the offense; if he did not commit the offense, he could not be the person who fled, and any instruction referring to his flight therefore carries with it the implication that he did commit the offense. This argument is unpersuasive. The same argument could be made as to any instruction that refers to "the defendant." The instructions refer to "the defendant" because he is the person who is defending against the charges. They make it clear that he is presumed innocent and he need not testify or otherwise prove his innocence; instead, the prosecutor has the burden of rebutting this presumption with evidence beyond a reasonable doubt. M Crim JI 3.2; M Crim JI 3.3. They also make it clear that the fact that the defendant is charged with a crime is not evidence and when defendant's identity as the perpetrator is disputed, the prosecutor must prove the defendant's identity beyond a reasonable doubt. M Crim JI 3.5(4); M Crim JI 7.8(1). The trial court gave these instructions to the jury and they were sufficient to protect defendant's rights.

## IV. SCORING THE GUIDELINES

Defendant next contends that the trial court erred in scoring certain offense variables of the sentencing guidelines. We conclude that this issue has been waived because defense counsel expressly agreed on the record that defendant did not dispute the scoring of any offense variables, and he approved the scored variables "as to form and content." Defense counsel's waiver of any scoring issue leaves no error for review. See *People v Carter*, 462 Mich 206, 215, 219; 612 NW2d 144 (2000).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, in his Standard 4 brief, defendant complains that trial counsel was ineffective. Defendant's failure to raise this issue in an appropriate motion in the trial court limits our review to mistakes apparent from the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eloby (After Remand)*, 215 Mich App 472, 476; 547 NW2d 48 (1996). To establish a claim of ineffective assistance of counsel, the defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

Defendant has set forth a list of things he believes counsel should have done, but he has offered no argument explaining why the failure to do those things should be considered objectively unreasonable, much less to show that he was prejudiced by the omissions. An issue that has not been briefed and supported by citation to relevant authority is deemed abandoned on appeal. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009); *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). A party cannot "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, we decline to consider the issue.

Affirmed.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood