# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 14, 2018

v

DYMARID EMILE CARTER,

Defendant-Appellant.

No. 336793
Wayne Circuit Court
LC No. 16-008231-01-FC

---

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defedant appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), two counts of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to life in prison without parole for the first-degree murder conviction, 16 to 30 years in prison for each assault with intent to commit murder conviction, and two years in prison for the felony-firearm conviction. We affirm.

Defendant's convictions arise from a shooting at a strip mall in Detroit on August 16, 2016, which resulted in the death of 27-year-old Kuron Brandon. Brandon went to the strip mall with his friends, Christopher Ritter, Eric Little, and Terrence Averitte. Little parked his vehicle and entered one of the businesses at the strip mall while the others waited outside. Ritter and Averitte remained in the back seat of the car, but Brandon exited the car and stood by the back passenger side window. A group of four younger males walked by and Brandon began arguing with one of the members of the group who was wearing a white t-shirt. Ritter told Brandon to "leave it alone" because the others were younger and seemed to want "to start something." The four younger males walked away and Ritter saw them enter a dollar store at the end of the strip mall. Shortly thereafter, gunshots were fired that shattered the window of the vehicle occupied by Ritter and Averitte. After the shooting stopped, Ritter and Averitte discovered Brandon lying on the ground outside the vehicle. He had been shot three times and died from his wounds.

Although witnesses did not see the shooter, surveillance video footage showed a man wearing all black—who was identified as defendant by a police officer—stop at the door of the dollar store before exiting. He appeared to pull something from his right pocket and then make a racking motion as he exited the store. Video footage showed four men exiting the store and move back and forth, while peeking toward the front of the strip mall. The man wearing black

-1-

ran toward the back of the strip mall with a man in a white t-shirt and jeans. Less than a minute later, a man wearing black could be seen going to the front of the store, crouching slightly, and pointing his arms in front of him. The video footage showed Brandon falling to the ground and the man in black running away.

## I. IDENTIFICATION TESTIMONY

Defendant's first argument on appeal is that the trial court abused its discretion by allowing a police officer to identify defendant as the person wearing black clothing in a surveillance video from the dollar store. We disagree. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

Under MRE 701, a lay witness's testimony is limited to opinions and inferences that are rationally based on the witness's perception and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." A witness cannot provide his own opinions when the jury is equally capable of reaching a conclusion; this would invade the province of the jury. *Freed v Salas*, 286 Mich App 300, 346-347; 780 NW2d 844 (2009).

If a witness is in a better position than the jury to identify a person depicted in a video or photograph, the lay opinion testimony does not invade the province of the jury. *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013), citing *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993). As this Court observed in *Fomby*, 300 Mich App at 52-53, the *LaPierre* court offered two illustrations of when a lay witness may identify a defendant in a video or photograph at trial without invading the province of the jury. The *LaPierre* court explained:

> Our cases upholding the use of testimony of this type have been limited to two types. The first type is those in which the witness has had substantial and sustained contact with the person in the photograph. The second type is those in which the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph. [*LaPierre*, 998 F2d at 1465 (internal citations omitted).]

The " 'common thread' " binding these types of cases is the existence of a " 'reason to believe that the witness is more likely to identify correctly the person than is the jury.' " *Fomby*, 300 Mich App at 52, quoting *LaPierre*, 998 F2d at 1465.

In this case, Officer Ronald Hopp observed the video of four young men entering the dollar store briefly and then exiting again. Officer Hopp identified the man wearing all black as defendant and identified another man with defendant, who was wearing a white t-shirt, as Davon Reese. Officer Hopp's testimony was rationally based on his perception because he personally watched the video at the dollar store, at the police station, and again at trial. See MRE 701. And his testimony was helpful to the jury. As defense counsel acknowledged repeatedly at trial, the dollar store video was unclear because of its angle and "you can't really see the faces of the individuals." The trial court similarly concluded that the video was "grainy" and the "clearness . . . cannot be ascertained by someone who is not necessarily familiar with that individual."

According to Officer Hopp, he was assigned to the precinct where defendant lived, and defendant would hang out at an intersection that Officer Hopp patrolled frequently. As a result, Officer Hopp saw defendant about three times a week. In addition, Officer Hopp testified before trial, and outside the presence of the jury, that he had personally arrested defendant three times, once as recently as 15 days before the shooting. Because of Officer Hopp's familiarity with defendant, including his height, weight, hairstyle, complexion, and a unique bumpy skin condition on his cheeks, Officer Hopp was able to make a determination about defendant's identity on the video that the jury was not equally capable of making. See MRE 701; *Freed*, 286 Mich App at 346-347.

Further, his past experience with Reese allowed Officer Hopp to identify him on the video and testify that he had observed Reese and defendant together before. Thus, because of Officer Hopp's prior familiarity with defendant, the admission of his testimony identifying defendant on the video footage from the dollar store was not an abuse of discretion. Moreover, contrary to defendant's argument on appeal, Officer Hopp did not identify defendant as the shooter. Whether the person in all black at the dollar store, who Officer Hopp opined was defendant, was the same person in black who came from behind the strip mall shortly afterward and appeared to fire shots at the victim and the car remained a question of fact for the jury.

## II. SUFFICIENCY OF THE EVIDENCE

Next, in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief"), defendant argues that there was insufficient evidence to support his convictions. We disagree. A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by considering the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

The elements of first-degree premeditated murder are: (1) an intentional killing of a human being (2) with premeditation and deliberation. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Premeditation means "to think about beforehand," and deliberation means "to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation omitted). Premeditation and deliberation require sufficient time to allow the defendant to reconsider his actions, or in other words, sufficient time to "take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (citation omitted). Factors relevant to the establishment of premeditation and deliberation include: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*. (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted).

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007) (quotation marks and citation omitted).

Defendant focuses on two challenges to the evidence. First, defendant argues that there was insufficient evidence to prove that he was the shooter. Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Video footage from three different businesses at the time of the shooting depicts four young men at the strip mall. While the victim, Ritter, and Averitte waited for Little outside one of the businesses at the mall, the four young men walked by and one of them in a white t-shirt—who was later identified as Davon Reese—had an altercation with the victim.[1] Referring to the video footage, the prosecutor argued that the jury could infer from the gestures of the young man wearing all black that he backed up Reese during the altercation. Ritter identified the man in black as defendant, both in a photographic array and at trial. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) ("positive identification by witnesses may be sufficient to support a conviction of a crime").

Ritter and Averitte testified that, after the altercation, they saw the four young men briefly enter the store at the end of the strip mall and the dollar store video footage similarly corroborated their testimony. Again, Officer Hopp identified the young man wearing black on the dollar store footage as defendant. After the man in black retrieved an object from his pocket and made what Officer Hopp described as a "racking motion," the four young men exited the store. Although the video footage outside the strip mall was remote and did not show the young men's faces well, it nevertheless depicted four men wearing similar clothing walk to the side of the dollar store and then a man wearing black and a man in a white t-shirt running behind the building. Nineteen seconds later, a man in black appeared on the video footage again, walking from behind the strip mall on the other side. He then peeked to look toward the victim. The footage shows the back of the man in black crouch down and point his hands toward the victim, after which the victim falls. Meanwhile, Ritter and Averitte were diving for cover from gunshots. Even though witnesses only identified defendant at the strip mall before the shooting, and no witnesses identified defendant as the shooter, the jury could infer from the shooter's clothing and the timing of his appearance from behind the strip mall that defendant was the shooter. Viewing the evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich App at 175, it was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant was the shooter.[2]

Second, defendant argues that there was insufficient evidence of premeditation and deliberation. We again disagree. The victim argued with defendant's friend, and defendant

---

[1] Evidence was presented that Reese and defendant had spent time together in the past.

[2] Defendant argues that the evidence did not "unequivocally" establish that he was the shooter, but defendant misstates the burden of proof, which was "beyond a reasonable doubt." See *Harverson*, 291 Mich App at 175.

backed his friend up, minutes before the shooting. See *Abraham*, 234 Mich App at 656. From Officer Hopp's testimony, the jury could infer that the four young men sought cover in the dollar store while defendant retrieved a gun from his pocket and racked it. See *id*. The jury could also infer that defendant ran to the back of the strip mall, exited on the other side to approach the victim from behind, and then peeked toward the victim from the side of the building before firing the shots.[3] Given that defendant only needed time to take a second look, *id*., the evidence of defendant's conduct inside the dollar store after the altercation with the victim, and then his movements and activity after leaving the dollar store before the shooting, viewed in a light most favorable to the prosecution, was sufficient evidence to enable a rational trier of fact to find beyond a reasonable doubt that defendant shot the victim with the requisite premeditation and deliberation to support his first-degree murder conviction.

Defendant attempts to attack the credibility of the evidence by arguing that Officer Hopp was biased and that eyewitness identification is subject to error. But credibility determinations are within the exclusive province of the jury and will not be second-guessed by this Court. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

## III. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues in his Standard 4 brief that the jury verdict is against the great weight of the evidence. We disagree. This issue is not preserved for appellate review because defendant did not raise this issue in a motion for a new trial before filing this appeal; thus, our review is for plain error affecting his substantial rights. See *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014).

In determining whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). In *People v Musser*, 259 Mich App 215; 673 NW2d 800 (2003), this Court explained:

> "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646. (citation omitted). [*Id*. at 219.]

---

[3] The video footage depicts defendant running from the strip mall. Defendant's flight could be considered as evidence of his consciousness of guilt. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995) (evidence of flight "is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction").

Defendant challenges the weight of the evidence by arguing that the eyewitnesses could not identify him as the shooter. Indeed, Ritter and Averitte testified that they could not see the shooter when they were diving for cover from the gunfire. As addressed earlier, however, both Ritter's and Officer Hopp's testimony established that defendant was at the strip mall wearing all black. Although the video footage of the shooting was unclear, the jury could infer from the argument with the victim, the shooter's black clothing, and the timing of the shooter's appearance from behind the building—where defendant had gone—that the shooter was defendant. Such an inference is not contradicted by indisputable physical facts and does not defy physical realities. See *id*., quoting *Lemmon*, 456 Mich at 645-646.

Defendant further challenges the weight of the evidence by noting a lack of DNA results connecting him to the door of the dollar store in the strip mall. Only one out of four samples, however, showed "very strong support" that defendant was not a donor. For the remaining samples, the analyst could not exclude defendant as a donor. Regardless, the officer-in-charge's testimony established that any lack of DNA evidence could be explained by the high traffic after defendant passed through the door and the resulting contamination of the scene. Moreover, "the prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citations omitted).

Defendant argues that the verdict is against the weight of the evidence because he had an alibi for the time of the shooting. Defendant points to an interrogation statement form, on which he stated that he had been home with his girlfriend on the day of the shooting. But no evidence of defendant's alibi or the statement form was admitted into evidence. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Because the jury was not presented with any alibi evidence, its verdict cannot be challenged on that basis.

In sum, defendant cannot establish plain error affecting his substantial rights based on his great weight of the evidence claim.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly